IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PRE-WAR ART, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-0559-N |
| | § | |
| STANFORD COINS & BULLION, INC., | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

This Order addresses Dillon Gage, Inc. of Dallas's ("Dillon Gage") motion to dismiss [49], Pre-Wart Art, Inc. d/b/a Gagosian Gallery's (the "Gallery") motion for summary judgment [41], Dillon Gage's motion to strike [56], and the Gallery's motion for leave to file a supplemental appendix [65]. For the reasons that follow, the Court grants Dillon Gage's motion to dismiss in part and denies it in part. The Court denies the Gallery's motion for summary judgment. And the Court denies the Gallery's motion for leave and Dillon Gage's motion to strike as moot.

## I. THE GALLERY AND DILLON GAGE'S GOLD DISPUTE

In 2009, the Gallery sought to purchase 101 32.15-oz. gold bars for use in an art exhibition. The director of the Gallery, Melissa Lazarov, contacted Joseph Frisard, the president of Stanford Coins & Bullion ("SCB"), to obtain the gold. Lazarov negotiated for the price of the gold to be the spot price of gold plus an "amount on top." *See* Ex. D, Lazarov Depo., 36:8-9, *in* App. Supp. Def.'s Resp. Pl.'s Mot. Summ. J. 65. Because SCB

ORDER – PAGE 1

kept very little gold inventory, SCB needed to purchase gold from an outside source to fill the order.

SCB had an existing relationship with Dillon Gage, a precious metals dealer. Indeed, SCB and Dillon Gage did business so often that SCB purchased gold on an open account. The account allowed SCB a credit limit of $500,000, and any payments made to Dillon Gage would reduce Stanford Coin's outstanding balance. Dillon Gage eventually increased the credit limit to $1,000,000. During an especially profitable time for the gold market, Dillon Gage allowed SCB to exceed this limit by 100%.

Shortly before the Gallery's order, SCB owed Dillon Gage more than double its credit limit. Dillon Gage's president, Terry Hanlon, went to Houston to discuss the balance with Frisard. Frisard represented that he was working on a large deal from New York that would bring the balance current. The parties dispute whether Frisard mentioned the Gallery to Dillon Gage. Nevertheless, as a result of SCB's large balance, Dillon Gage refused to ship gold or extend further credit to SCB.

The Gallery paid SCB over $3 million on February 2, 2009. SCB paid these funds to Dillon Gage. Dillon Gage apparently applied these funds to SCB's outstanding balance. As a result of this payment, SCB now had an approximately $1 million credit to apply to outstanding and future orders. Because SCB no longer owed Dillon Gage money for any delivered gold, Dillon Gage again began shipments to SCB, including one of the 101 bars of gold. Between February 2 and the scheduled March 4 delivery date for the remaining 100 gold bars, Dillon Gage shipped other orders, and SCB made separate payments. However,

ORDER – PAGE 2

SCB's balance in its open account was still substantially below its *outstanding* orders –
Dillon Gage still had 100 gold bars to deliver.  As a result, on February 13, Dillon Gage
informed SCB that it would need an additional $1.9 million dollars to ship the gold bars.
Dillon Gage did not receive any additional payment and, on February 17, when the Court
appointed the Stanford Receiver, SCB had a balance with Dillon Gage of approximately
$1,000,000 to be applied against outstanding orders of $3.5 million (including the order of
the undelivered 100 gold bars to send to the Gallery).

On February 27, 2009, the Gallery moved to intervene in *SEC v. Stanford
International Bank*, No. 09-CV-298.  On March 25, 2009, the Gallery filed a separate
lawsuit, this action, alleging breach of contract, conversion, and unjust enrichment.  Dillon
Gage moves to dismiss the Gallery's claims.  Meanwhile, the Gallery moves for summary
judgment.

## II.  THE COURT DENIES DILLON GAGE'S MOTION TO DISMISS IN PART, AND GRANTS IT IN PART

### A.  *Rule 12(b)(6) Standard*

When faced with a Rule 12(b)(6) motion to dismiss or a 12(c) motion, a court must
determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn
v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include
"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff
must "plead[] factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### B. The Gallery States a Declaratory Judgment Claim

The Declaratory Judgment Act ("DJA") provides that "in a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interesting party seeking such declaration, where or not further relief is or could be sought." *See* 28 U.S.C. § 2201. For justiciable controversies, a district court has discretion over whether to decide or dismiss a declaratory judgment action. *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).

There is an actual controversy between the parties: the Gallery paid SCB for gold, SCB attempted to acquire the gold from Dillon Gage, and the Gallery never received the gold. This does not call for "an opinion advising what the law would be upon a hypothetical set of facts." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 27-28 (5th Cir. 1989) (quoting *Aetna*

*Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-241 (1937)).  Thus, the Court has discretion to entertain this declaratory judgment action.[1]

Although the Court has discretion to entertain the action, the Gallery argues that the Court should dismiss the declaratory action because it seeks declarations "that will already be resolved as part of the claims in the lawsuit."  *See Regus Mgmt. Grp., LLC v. Int'l Bus. Machine Corp.*, No. 3:07-CV-1799-B, 2008 WL 243425, at *3 (N.D. Tex. June 21, 2007).  Although acknowledging the rationale against duplicative claims, the Court disagrees that the Gallery's declaratory action is merely duplicative of its non-declaratory claims.

The Gallery seeks a declaration broader than one that declares its contractual rights with respect to the Receiver and Dillon Gage.  In addition to declaring those contractual rights, the Gallery seeks a declaration from this Court about how the Receiver should treat the Gallery in its claim process if the Gallery does not have a contractual relationship with Dillon Gage.  It also seeks a declaration regarding the Receiver's rights to recover from Dillon Gage for the failure of Dillon Gage to deliver the gold.  The Court would not resolve these issues simply by determining the Gallery's contract, conversion, and unjust enrichment claims.  The Court therefore declines to dismiss the declaratory judgment action.

---

[1]Dillon Gage argues that the Gallery fails to state a Declaratory Judgment claim because the DJA only "settle[s] actual controversies before they ripen into violations of law or breach of some contractual duty."  *See United of Omaha Life Ins. Co. v. Region 19 Edu. Serv. Ctr.*, No. 3:02-CV-0279-D, 2002 WL 1285204, at *3 (N.D. Tex. June 4, 2002).  Dillon Gage thus contends that the DJA is only applicable to declaring the rights of future actions, not past conduct.  The Court disagrees.  Although the Court recognizes that the DJA is particularly suited for declaring rights regarding future actions – assuming a justiciable controversy – the DJA's text does not contain any past conduct/future conduct distinction.

### C.  The Gallery States a Breach of Contract Claim

To state a claim for breach of contract, the Gallery must allege facts showing: (1) the existence of a valid contract between the Gallery and Dillon Gage; (2) performance or tendered performance by the Gallery; (3) breach of the contract by Dillon Gage; and (4) damages sustained as a result of the breach.  *See B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App. – Houston [1st Dist.] 2009, pet. denied).  Dillon Gage argues that the Gallery failed to plead the existence of a valid contract.

The Gallery pleads that "the Gallery was the disclosed principal and Stanford Coins was its agent on a commission basis for the purchase of the Gold from Dillon Gage."  Pl.'s First Am. Compl. ¶ 29.  The Gallery further pleads that it "retained Stanford Coins as the Gagosian Gallery's broker to obtain gold from an outside source."  *Id.* ¶ 6.  The Gallery pleads that it paid SCB, and SCB paid Dillon Gage, for 101 bars of gold, but received only one of those bars.  This is sufficient to plead the existence of a valid contract.  Even if the Gallery did not allege that SCB disclosed the Gallery as principal, there is no requirement in Texas law that SCB, if it was acting as the Gallery's agent, needed to disclose its agency status to form a contract between the Gallery and Dillon Gage.  If SCB is acting with actual authority to bind the Gallery, the Gallery may sue on what would be the Gallery's contract with Dillon Gage.  *See Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 420 (Tex. App. – Houston [14th Dist.] 2007, no pet.).  Accordingly, the Court declines to dismiss the Gallery's breach of contract claim.

### *D. The Gallery States a Third-Party Beneficiary Claim*

"A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to this party, and only if the contracting parties entered into the contract directly for the third party's benefit." *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). Further, the alleged third-party beneficiary must show "that he is either a donee or creditor beneficiary of, and not one who is benefitted only incidentally by the performance of, the contract." *Id.* An alleged beneficiary is a donee beneficiary "if the performance promised will, when rendered, come to him as a pure donation." *Id.* An alleged beneficiary is a creditor beneficiary, however, when the performance comes in satisfaction of a legal duty owed to the alleged beneficiary by the promissee. *See id.* Such duties include debts, contractual obligations, or other legally enforceable commitments. *See id.*

"The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.* In other words, a contract does not confer third-party rights unless (1) the contract plainly expresses the third-party obligation of the bargain-giver, (2) it is unmistakable that a benefit to the third party is within the contemplation of the primary contracting parties, and (3) the primary parties contemplate that the third party would be vested with the right to sue for enforcement of the contract. *Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 120 (Tex. App. – Houston [1st Dist.] 2009, pet. denied). Any doubt concerning the parties' intent

should be resolved against the third party. *EOG Res., Inc. v. Hurt*, 357 S.W.3d 144, 148 (Tex. App. – Fort Worth 2011, pet. denied).

The Gallery pleads facts to show that it is a creditor beneficiary. It pleads that it ordered 101 bars of gold from SCB, that it paid SCB for the gold, and that it received only one bar of gold. *See* Compl. ¶¶ 7, 9, 14. The Gallery also sufficiently pleads the other third-party beneficiary requirements. Specifically, the Gallery pleads: "Stanford Coins and Dillon Gage entered into a contract for the delivery of the Gold with the intent to benefit the Gallery – namely, to deliver the Gold to the Gallery." Compl. ¶ 34. "Moreover, Stanford Coins and Dillon Gage entered into that contract directly for the purpose of benefitting the Gallery." *Id.* ¶ 35. And further: "Dillon knew the purchase price was coming directly from the Gallery, through Stanford Coins." *Id.* ¶ 10.

Dillon Gage argues that the Gallery's pleadings fail because they do not allege a specific contractual provision that clearly and fully expresses an intent to contract for the plaintiff's benefit. But although the parties' intention to benefit a third party must be clear, Texas courts have never indicated that the intention must be in writing.[2] *See Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1456-57 (5th Cir. 1987) (upholding jury verdict and holding that, although plaintiff was not named in any written agreements, it was third-party beneficiary of oral promises and understandings evidenced at trial). And in any event the

---

[2]The Court recognizes that the Texas Supreme Court has stated that the intent to benefit a third party must be "spelled out." The Court declines, however, to consider this ambiguous language of the Texas Supreme Court to indicate an explicit writing requirement.

Gallery does point to such a contractual provision: Dillon Gage's promise to ship the gold to the Gallery. This alleged promise and the Gallery's allegation that Dillon Gage knew that the Gallery was the purchaser of the gold, are sufficient to plead that SCB and Dillon Gage intended to directly benefit the Gallery and gives Dillon Gage sufficient notice to prepare its defense. *Cf. Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*, 2007 WL 2729935, at *8 (N.D. Tex. 2007) (denying motion to dismiss where plaintiff alleged contract was "entered into for the benefit of" parties like plaintiff). The Court thus declines to dismiss the Gallery's third-party beneficiary claim.

### E. The Gallery Sufficiently States Its Conversion Claim

To plead a conversion claim, a plaintiff must allege facts showing: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property. *Show Servs., LLC v. Amber Trading Co., LLC*, No. 3:09-CV-2385-D, 2010 WL 4392544, at *4 (N.D. Tex. Oct. 29, 2010).

The Gallery pleads its ownership or possessory interest; it alleges that it paid for 100 bars of gold that it did not receive. The Gallery pleads that it instructed Dillon Gage to ship the gold to gallery when Dillon Gage did not do so and that Dillon Gage failed to deliver the gold. This is a sufficient pleading. The Court thus declines to dismiss the Gallery's conversion claim.

### F. The Court Dismisses the Gallery's Claim for Unjust Enrichment

Whether unjust enrichment is an independent cause of action or simply a equitable remedy is somewhat unsettled. *See, e.g.*, *Janvey v. Alguire*, 846 F. Supp. 2d 662, 673-74 (N.D. Tex. 2011). Although Texas courts state that a party may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage, *see Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992), or where a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other reasons, *see City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 318 (Tex. App. – Austin 1992, no writ), to stand alone, unjust enrichment must be based on implied or quasi contract. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000) ("Unjust enrichment claims are based on quasi-contract."). The quasi-contractual *claim* of unjust enrichment, however, is generally unavailable when there is a valid contract governing the subject matter of the dispute. *See id.* at 685 ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory."); *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964) (holding trial court did not err in refusing quantum meruit instruction, a cause of action based on implied contract, when express contract existed).

The facts in *Woodard* are similar to the current dispute. There, a corporation, Woodard, contracted with James Svalberg for general advertising services. *Id.* Svalberg, in turn, contracted with Southwest, for television and radio advertisements promoting Woodard.

*Id.* Southwest filed suit against Woodard, arguing that Svalberg acted as Woodard's agent in contracting with Southwest. In the alternative, Southwest sought recovery on a quantum meruit theory, an implied contractual theory based on unjust enrichment, because it benefitted from Southwest's services without fully compensating Svalberg who correspondingly failed to fully compensate Woodard. *Id.* A jury held that Svalberg was not acting as an agent. *Id.* Over objection, the trial court refused to send the quantum meruit instruction to the jury. Id.

The court of civil appeals reversed and remanded on the instruction issue because Woodard benefitted from Southwest's services – through Svalberg's services – and Svalberg did not fully compensate Southwest. *Id.* The Texas Supreme Court reversed, holding that the trial court did not err in refusing the quantum meruit instruction. *See id.* The Court reasoned that, because Southwest had pleaded that it had an express contract with *Svalberg* governing the dispute it could not bring a quantum meruit claim against *Woodard* for Svalberg's breach. *See id.* The Court reached this result even though there *wasn't* a contract between Southwest and Woodward. Southwest's alleged contract between itself and Svalberg was an express contract prohibiting an implied contractual remedy.

The Gallery argues that either an express contract governs the dealings between it and Dillon Gage, or that Dillon Gage was unjustly enriched by failing to comply with its contract with SCB. If the Gallery has a contract with Dillon Gage through SCB's alleged agency relationship, unjust enrichment is squarely unavailable as a remedy. On the other hand, if the Gallery instead contracted with SCB, *Woodward* precludes the Gallery's unjust

enrichment claim. The Gallery pleads that SCB sent it a sales order for 101 gold bars and that the Gallery paid SCB according to those sales orders. Unless SCB was the Gallery's agent, this is a contract between the Gallery and SCB that, under *Woodward*, precludes the Gallery's unjust enrichment claim. Because an express contract governs the claim – either between the Gallery and Dillon Gage or between the Gallery and SCB – unjust enrichment is unavailable. The Court thus dismisses the Gallery's unjust enrichment claim.

### III. THE GALLERY IS NOT ENTITLED TO SUMMARY JUDGMENT AGAINST DILLON GAGE

#### A. Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment

either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. The Gallery Is Not Entitled to Summary Judgment on Its Breach of Contract Claim

The Gallery argues that it is entitled to summary judgment because there are no material fact issues that Dillon Gage breached its contract with the Gallery. To prove a breach of contract, the Gallery must show: (1) the existence of a valid contract between the Gallery and Dillon Gage; (2) performance or tendered performance by the Gallery; (3) breach of the contract by Dillon Gage; and (4) damages sustained as a result of the breach. *See B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App. – Houston [1st Dist.] 2009,

pet. denied).  The Gallery fails to show that, as a matter of law, there was a valid contract between the Gallery and Dillon Gage.

Whether the Gallery contracted with Dillon Gage depends on whether SCB was the Gallery's agent.  There are issues of material fact regarding SCB's agency status. A court may not presume an agency relationship.  Rather, direct or circumstantial evidence must show that such a relationship exists.  An essential element of the relationship centers around the principal's right to control the actions of the agent, not only to assign tasks, but also to dictate the means and details of the process by which an agent will accomplish the task. *Townsend v. Univ. Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 921 (Tex. App. – Texarkana 2002, pet. denied).  Although an agency relationship is a question of law, if the facts surrounding the agency relationship are disputed, those facts are for the jury.  *Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593, 600 (Tex. App. – Texarkana 1994, writ denied).

An agent may act for a principal if the agent has either actual or apparent authority. Actual authority is created through words or conduct of the principal communicated to the agent.  *Spring Garden 79U, Inc. v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App. – Houston [1st Dist.] 1994, no writ).  Apparent authority, on the other hand, is created by words or conduct *by the principal to the third party.  See Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 550 (Tex. App. – Houston [14th Dist.] 2003, no pet.) (citing *Cameron Cnty Sav. Ass'n v. Stewart Title Guaranty Co.*, 819 S.W.2d 600, 603 (Tex. App. – Corpus Christi 1991, writ denied).  Because the Gallery points to no evidence of any communication between itself and Dillon Gage prior to entering into any contract, SCB could

not have apparent authority to act on behalf of the Gallery. Thus, SCB needs actual authority. Thus, the only relevant evidence regarding SCB's alleged agency status is the interaction between the Gallery and SCB. *See CNOOC Southeast Asia Ltd. v. Paldin Resources (SUNDA) Ltd.*, 222 S.W.3d 889, (Tex. App. – Dallas 2007, pet. denied) (holding that finding of actual authority of agent cannot be based merely on agent's words or deeds). The existence of an agency relationship based on actual authority may be implied from the parties' conduct or from the facts and circumstances surrounding the transaction. *Johnson v. Holly Farms of Tex., Inc.*, 731 S.W.2d 641, 645 (Tex. App. – Amarillo 1987, no writ).

Here, facts regarding SCB's agency relationship are disputed. Although the Gallery points to evidence tending to show that SCB informed the Gallery that it would need to purchase the gold from an outside source, and that SCB would be paid on commission, this evidence does not conclusively prove an agency relationship. Dillon Gage offers a host of contrary evidence to rebut this evidence. Lazarov, the employee acting on behalf of the gallery to buy the gold, stated that she intended to purchase the gold *directly* from SCB. Further, she admitted that she did not intend to authorize SCB to enter into a contract on behalf of the Gallery.

Even if Dillon Gage did not offer evidence conflicting with the Gallery's evidence, the Gallery still did not establish an agency relationship with SCB. The Gallery points to the following interaction between the Gallery and SCB:

> (1) Frisard told Lazarov that SCB would need to obtain the gold from an outside source for delivery to the Gallery and SCB negotiated for a $15 per ounce commission for its services.

(2) Lazarov directed Frisard to obtain 100 bars of gold to be delivered to the Gallery in Beverly Hills on March 4, 2009.

These facts are insufficient to establish agency as a matter of law. There is no evidence that the Gallery agreed for SCB to *bind it* to a gold contract with a third party. Rather, the evidence merely shows that SCB did not have the inventory available to fulfill the Gallery's order, would seek to fulfill the order from elsewhere, but required a margin as a financial incentive to acquire the gold. Further, other evidence weighs against an agency finding. For example, the Gallery paid SCB – not Dillon Gage. Because there are material fact issues regarding SCB's agency relationship, and thus fact issues regarding the existence of a contract between the Gallery and SCB, the Court denies the Gallery's motion for summary judgment on this claim.

### C. The Gallery Is Not Entitled to Summary Judgment on Its Third-Party Beneficiary Claim

As previously noted, "[a] third party may recover on a contract made between other parties only if the parties intended to secure some benefit to this party, and only if the contracting parties entered into the contract directly for the third party's benefit." *See MCI Telecomms. Corp.*, 995 S.W.2d at 651 (Tex. 1999). "The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *See id.* In other words, a contract does not confer third-party rights unless (1) the contract plainly expresses the third-party obligation of the bargain-giver, (2) it is unmistakable that a benefit to the third party is within the contemplation of the primary contracting parties, and (3) the primary parties contemplate that the third party would be

vested with the right to sue for enforcement of the contract. *Abarca*, 305 S.W.3d at 120. Any doubt concerning the contracting parties' intent should be resolved against the third party. *EOG Resources, Inc.* 357 S.W.3d at 148.

The evidence does not establish as matter of law that the Gallery is a third-party beneficiary of a contract between SCB and Dillon Gage. The Gallery is correct that, because of its payment to SCB, SCB owed it a duty to deliver the gold. But the Gallery is incorrect that, simply because Dillon Gage had instructions to ship to the Gallery's Beverly Hills address, SCB and Dillon Gage intended to grant the Gallery authority to enforce SCB and Dillon Gage's contract.[3] Because there is no specific written contract – only a chain of e-mails and invoices – there is obviously no specific clause granting the Gallery enforcement powers. And although the Court recognizes that the contract between SCB and Dillon Gage need not contain magic words, *see City of Houston v. Williams*, 353 S.W.3d 128, 146 (Tex. 2011), the presumption against third-party beneficiaries is a strong one. The Court resolves any doubt about the parties' intent against third-party beneficiary status.

Although Dillon Gage may have contractually agreed to deliver 100 gold bars to the Beverly Hills location of the Gagosian Gallery, this promise alone does not establish, as a

_____

[3]The Court notes that there need not be specific evidence that SCB and Dillon Gage contemplated granting enforcement authority to the Gallery. Rather, contemplation of enforcement authority is evidenced by a contract that the parties clearly intend to benefit a third party directly such that courts should allow the third party to enforce the contract. *See, e.g.*, *Basic Capital Mgmt., Inc. v. Dynex Comm., Inc.*, 348 S.W.3d 894, 900 (Tex. 2011) (holding plaintiff was third-party beneficiary considering only contract and circumstances surrounding contract).

matter of law, that Dillon Gage and the Gallery intended to contract to directly benefit the Gallery. Dillon Gage offers evidence that it did not know the Gallery paid for the gold. *See* Ex. B, Hanlon Depo. 35:22-23, *in* App. Supp. Def.'s Resp. Pl.'s Mot. Summ. J. (hereinafter "Def.'s Appendix") 32 (stating that the Gallery was introduced to Dillon Gage only after Receivership); Ex. A, Frisard Depo. 154:25, 155:1-19, *in* Def.'s Appendix 20-21 (stating that Frisard told Dillon Gage where to ship the gold bars, but not necessarily that Gallery purchased the bars). Crediting this evidence, as the Court must, the Court concludes that the Gallery's shipping address, without more, fails to clearly evidence the intent of the parties to benefit the Gallery directly. An employee of the Gallery could have purchased the gold and delivered it to his workplace rather than his home. Or perhaps more plausibly, the artist responsible for constructing the exhibit might have purchased the gold but delivered it to the Gallery for purely pragmatic reasons. In these scenarios, the employee or the artist would be the alleged beneficiaries of SCB and Dillon Gage's alleged contract, not the Gallery. Although the Court recognizes these situations are only theoretical, it deploys them merely to show that a shipping address does not *always* indicate an intent to directly benefit the corporation located at that address. A shipment address, without more, does not establish, as a matter of law, that the Gallery is a third-party beneficiary; it is simply not "unmistakable" that a benefit to a third party was within the contemplation of SCB and Dillon Gage.

The Court notes that the text of the shipment instructions, however, also does not necessarily defeat the Gallery's third-party beneficiary claim. Although Texas law requires

ORDER – PAGE 18

that the contracting parties' intent to directly benefit a third party "must be clearly and fully spelled out," the Court notes that this standard derives from more fully negotiated, formalized, unambiguous contracts. Here, the contract includes not only the invoices and the shipment instructions, but also other oral and written understandings between the parties. *See Cunningham*, 824 F.2d at 1456-57 (upholding jury verdict based on oral promises and understandings establishing third-party beneficiary). If Dillon Gage, based on certain oral and written discussions, knew that the Gallery was gold purchaser *and* agreed to ship the gold to the Gallery, Dillon Gage's intent to benefit a third-party might be "clearly and fully spelled out." *See Basic Capital Mgmt., Inc.*, 348 S.W.3d at 900 (Tex. 2011) (holding that plaintiff was third-party beneficiary, in part, because defendant knew that purpose of contract was to secure financing for plaintiffs). But as noted, Dillon Gage's knowledge of the Gallery as purchaser is hotly contested. The Court thus finds issues of material fact regarding SCB's and Dillon Gage's intent to make the Gallery a third-party beneficiary of any contract, and accordingly, the Court denies the Gallery's motion for summary judgment on its third-party beneficiary claim.

### D.  The Gallery Is Not Entitled to Summary Judgment on Its Conversion Claim

An action for conversion requires that the plaintiff establish that, at the time of the conversion, it was (1) the owner of the property, (2) the legal possessor of the property, or (3) a person entitled to possession of the property. *JP Morgan Chase v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 536-37 (Tex. App. – Austin 2009, no pet.). The plaintiff must

also establish, among other things, that the defendant *unlawfully* assumed and exercised dominion and control over the property inconsistent with the plaintiffs' rights as owners. *See id.*

If the Gallery had a contract with Dillon Gage, the Gallery could not prevail on its conversion claim based on this summary judgment record because the Gallery would not have shown an "independent injury" from the alleged contract with Dillon Gage. Where there is no independent injury apart from a contract, a tort claim is unavailable. *See, e.g.*, *In re Soporex, Inc.*, 446 B.R. 750, 786-87 (Bankr. N.D. Tex. 2011) (holding that conversion claim is unavailable where plaintiff's injury is not independent from breach of contract injury) (citing cases).

If the Gallery did not have a contract with Dillon Gage, the Gallery still could not prevail on this claim at this phase of the litigation. According to this record, the Gallery fails to show that it was ever the owner of the property; absent other agreement, a buyer does not acquire title until the seller performs. *See* TEX. BUS. & COM. CODE § 2.401 (stating that seller's title to goods passes to buyer when seller completes his performance with respect to physical delivery of the goods). Thus, the Gallery must prove that it had a right to immediate possession.

If the Gallery's contract was with SCB, the Gallery had a right to immediate possession of the gold only in a limited scenario. Typically, in a sale-of-goods scenario, a plaintiff is entitled to the value of goods and not the actual goods. TEX. BUS. & COMM. CODE § 2.713 (providing that buyer's remedy on nondelivery is difference between market price

ORDER – PAGE 20

and contract price plus consequential damages). Thus, if SCB was in breach of its contract, the Gallery was not entitled to "immediate possession" of any specific gold. Instead, it was entitled to money damages.

At the time of the conversion, the Gallery may have had the right to recover the specific gold – and the corresponding right to immediate possession – if SCB "identified" the goods as the goods to which a contract refers. *See* TEX. BUS. & COMM. CODE § 2.501 (providing method for identification absent other agreement). If SCB was insolvent – a subject on which the Gallery offers no evidence – the Gallery would have the right to recover specifically identified goods. *See* TEX. BUS. & COMM. CODE § 2.502 (providing that buyer has right to recover specifically identified goods if seller is insolvent within 10 days of first payment). But "[t]he determination of whether a seller has identified, shipped, marked, or otherwise designated goods under § 2–501, as the goods to which a contract refers, is a 'fact intensive inquiry that turns upon the specific manner in which the seller conducts its business.'" *U.S. v. 328 Pounds, More or Less, of Wild Am. Ginseng*, 347 F. Supp. 2d 241, 247 (W.D.N.C. 2004) (quoting *HoldTrade Int'l, Inc. v. Adams Bank & Trust (In re Quality Processing, Inc.)*, 9 F.3d 1360, 1364 (8th Cir. 1993)). The Gallery's evidence – that Dillon Gage stated that "we have your gold here" and that Dillon Gage's inventory increased dramatically in preparation for delivery – is insufficient to discharge the Gallery's summary judgment burden. For one, it only speaks to Dillon Gage's intent. In the absence of a contract between the Gallery and Dillon Gage, SCB's intent is the relevant intent. Further, if SCB never actually owned the gold because Dillon Gage never delivered the gold, it is

difficult to conceive how SCB could legally identify the gold it did not yet own. And in any event, Dillon Gage offers rebuttal evidence that Dillon Gage did not segregate inventory by order. Finally, the Gallery has offered no evidence about SCB's solvency, and thus the Gallery could not show its entitlement to possession at the time of the conversion under these provisions of the UCC. Because the Gallery has not shown that owned the gold, was entitled to immediate possession of the gold, or because Dillon Gage raised issues of material fact regarding ownership or right to possession, the Court denies the Gallery's motion for summary judgment on its conversion claim.

### E. The Gallery Is Not Entitled to Summary Judgment on Its Declaratory Judgment Claim

The Gallery seeks the following declarations:

(1) The Gallery is entitled to the proceeds of the gold and neither Dillon Gage nor Stanford Coins are entitled to any such proceeds.

(2) The Gallery is entitled to any profits that Dillon Gage made in selling the gold belonging to the Gallery.

(3) The Gallery is a Category I Asset customer under the Court's January 5, 2010 Order in *SEC v. Stanford Internationall Bank*, No. 09-CV-0298.

(4) The Receiver has no right to obtain the proceeds of the gold for the benefit of Ponzi scheme victims because the Receiver has no claim to funds that are not ill-gotten proceeds from the Ponzi scheme and the Gallery has a legitimate claim to those funds in that the funds originated with the Gallery and are the subject of a contract with the Gallery.

Pl.'s First Am. Compl. ¶¶ 23-27. The Court denies the Gallery's motion for summary judgment as to each declaration.

First, it is inappropriate to determine whether SCB breached its contract with the Gallery because there is a material fact issue regarding whether SCB was an agent of the Gallery. Thus, it is inappropriate for the Court to declare that the Receiver has wrongfully claimed that the proceeds of the gold are the property of SCB or that the Gallery is entitled to the proceeds of the gold. First Am. Compl. ¶ 23, 24

The Court also declines to declare that the Gallery is a "Category 1" customer of SCB. The Gallery points out that this Court granted the Receiver leave to dispose of "individually marked and stored" coins and bullion for 147 SCB customers. *See* Order of January 5, 2010 [943], *in SEC v. Stanford Int'l Bank*, No. 3:09-CV-298 (N.D. Tex. filed Feb. 17, 2009). The Gallery would like to be treated the same because Dillon Gage "marked" the gold at the direction of SCB. But, as noted, the summary judgment record indicates that neither SCB nor the Gallery ever owned the gold because Dillon Gage never delivered the gold. *See* TEX. BUS. & COM. CODE § 2.401 (stating that seller's title to goods passes to buyer when seller completes its performance with respect to physical delivery of goods). Additionally, there are fact issues about whether the gold was identified and who did the alleged identifying. The Gallery is thus not entitled to a declaration that it is a Category I Asset customer.

The Gallery is also not entitled to a declaration regarding the Receiver's rights to the gold proceeds. The Gallery argues that the Receiver "cannot obtain equitable relief from a non-party against whom no wrongdoing is alleged." *See* Pl.'s Mot. Summ. J. 31. But the Receiver is not seeking to obtain equitable relief from a nonparty. The Gallery is the party seeking relief in this action. And in the Receiver's action against Dillon Gage, the Receiver

ORDER – PAGE 23

asserts that Dillon Gage received fraudulent transfers – a type of wrongdoing.  Further, the Receiver could recover from Dillon Gage in a breach-of-contract action.  Lastly, the Gallery's rights with respect to the gold proceeds vis-à-vis the Stanford Entities is appropriate for determination in the Receiver's claims process and the main SEC action, not this case.  And the Gallery's rights with respect to the gold proceeds vis-à-vis Dillon Gage will be determined by this Court via the Gallery's other claims.  Accordingly, the Court denies the Gallery's motion for summary judgment on its declaratory judgment claim. Because the Court's result would be the same even considering the Gallery's supplemental appendix or the Gallery's evidence to which Dillon Gage objects, the Court denies Dillon Gage's motion to strike and the Gallery's motion for leave to file a supplemental appendix as moot.

### CONCLUSION

For the reasons stated above, the Court grants Dillon Gage's motion in part and denies it in part.  The Court denies the Gallery's motion for summary judgment.  And the Court denies as moot the Gallery's motion for leave to file a supplemental appendix and Dillon Gage's motion to strike.

Signed March 19, 2013.

David C. Godbey
United States District Judge